

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2008

# Sukamto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4474

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sukamto v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1360.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1360

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-4474
_____

BUDI SUKAMTO,

Petitioner

v.

ATTORNEY GENERAL USA,

Respondent
_____

Petition for Review of an Order of the United States
Department of Justice Board of Immigration Appeals
(BIA No. A96-262-890)
Immigration Judge Donald V. Ferlise
_____

Submitted Under Third Circuit LAR 34.1(a)
March 4, 2008

Before:  BARRY, JORDAN, and HARDIMAN, *Circuit Judges.*

(Filed:  March 31, 2008)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Budi Sukamto petitions for review of the decision of the Board of Immigration Appeals ("BIA") denying his application for withholding of removal and relief under the Convention Against Torture ("CAT"). We will deny the petition for review.

I.      *Background*

Because we write only for the parties, we will discuss only those facts relevant to the petition for review. Sukamto is a citizen of Indonesia and ethnically Chinese. He also belongs to the Roman Catholic faith. He entered the United States in June 1999 and filed his application for relief in 2003.

An Immigration Judge ("IJ") held a hearing on Sukamto's application on June 27, 2005. At his hearing, Sukamto testified that, beginning in elementary school, other students bullied him because of his Chinese ethnicity. According to Sukamto, this harassment continued through his years in college. He also testified that in 1985 police refused to investigate a robbery at his family's store unless his father agreed to pay them, and that, after his father paid the officers, they still failed to investigate the robbery. He further testified that in 1988 police officers took cigarettes and gasoline from the family store without paying for them, and mobs looted another store owned by his uncle. He said that, also in 1998, mobs threatened to burn his father's store. Again in 1998, he was, he said, attacked by a group of men who tried to rob him and threatened that they would "[k]ill that China." (Appendix "App." at 60.) He explained that he escaped by jumping

2

into a nearby taxi.  Finally, Sukamto candidly acknowledged to the IJ that he was not persecuted because of his religious faith.

The IJ denied all of Sukamto's claims for relief.  Although he found Sukamto credible, the IJ concluded that most of the unfortunate incidents Sukamto described did not occur on account of a protected ground.  Additionally, the IJ found that none of the incidents rose to the level of persecution, and concluded that nothing in the record, including the 2004 Department of State Country Report for Indonesia, indicated that Sukamto would be persecuted on account of his ethnicity by the Indonesian government or forces the government was unable to control if he returned to Indonesia.

Sukamto filed a timely appeal to the BIA, in which he argued that he was entitled to relief because there is a pattern or practice of persecution against ethnic Chinese Catholics in Indonesia.  Sukamto also argued that the misfortunes he suffered rose to the level of persecution.  On September 14, 2006, the BIA affirmed the IJ, specifically concluding that "we concur with the [IJ] that such a pattern or practice of persecution against ethnic Chinese is not present throughout Indonesia ... ."  (App. at 9.)  Sukamto then filed a timely petition for review.

## II.    *Discussion*

In his petition for review,[1] Sukamto does not argue that his experiences in Indonesia amount to persecution. Instead, he contends that the IJ failed to consider whether a pattern or practice of persecution against Chinese Catholics exists in Indonesia. He further contends that the BIA erred in determining that the IJ made such a finding. Finally, he argues that the BIA's decision affirming the IJ is not supported by

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a). In its decision, the BIA expressly adopted the IJ's reasoning and also added its own analysis. Therefore, we may review both the IJ's and the BIA's decision. *Voci v. Gonzales*, 409 F.3d 607, 612 (3d Cir. 2005) (citations omitted). The BIA's determination that Sukamto is not entitled to relief is reviewed for substantial evidence. *Lie v. Ashcroft*, 396 F.3d 530, 534 n.3 (3d Cir. 2005). This is a highly deferential standard, and the BIA's decision must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (citation omitted).

To establish eligibility for withholding of removal, an applicant must show that it is "more likely than not" that he will face persecution if he is removed. *INS v. Stevic*, 467 U.S. 407, 424 (1984). The applicant must also show that he was persecuted on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An applicant may meet this burden by (1) demonstrating past persecution, which raises a rebuttable presumption of future persecution, or (2) showing a clear probability that he will face future persecution if removed. *Gabuniya v. A.G. of the United States*, 463 F.3d 316, 320-21 (3d Cir. 2006). The BIA interprets persecution to include "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). To demonstrate a "well-founded fear of persecution," an alien "must demonstrate ... both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution." *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003) (citation omitted, emphasis removed). An applicant can satisfy the objective prong either by showing that he would be singled out for persecution or that "there is a pattern or practice in his ... country of nationality ... of persecution of a group of persons similarly situated to the applicant" on account of one of the protected grounds. 8 C.F.R. § 208.13(b)(2).

4

substantial evidence because the record establishes that such a pattern or practice does exist.

We conclude that the IJ found no pattern or practice of persecution against Chinese Catholics in Indonesia, and that the BIA's decision affirming that finding is supported by substantial evidence. We have explained that "to constitute a pattern or practice, the persecution of the group must be systemic, pervasive, or organized. ... [And it must be] committed by the government or forces the government is either unable or unwilling to control." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (internal quotation marks and citations omitted).

Although the IJ's decision does not use the phrase "pattern or practice," the IJ determined that the Indonesian government would not persecute Sukamto because of his ethnicity or fail to protect him from people who would do so.[2] Because, under *Lie*, an applicant seeking withholding of removal on the basis of a pattern or practice is required to show that the feared persecution is "committed by the government or forces the government is unable or unwilling to control," it follows that the IJ found that Sukamto could not establish the existence of a pattern or practice of persecution against ethnic Chinese Catholics in Indonesia.

---

[2]The IJ understandably concentrated on ethnicity, since Sukamto directed the focus there by indicating that he had been targeted because of his ethnicity but never because of his religion.

The BIA's decision affirming the IJ's finding is supported by substantial evidence. In *Lie*, we affirmed the BIA's decision that the petitioner "ha[d] failed to establish ... that there [was] a 'pattern or practice' of persecution of Chinese Christians in Indonesia." *Id.* While a petitioner's failure to prove a pattern or practice of persecution in 1999 does not automatically mean that such can never be proven, *see Sukwanputra v. Gonzales*, 434 F.3d 627, 637 n.10 (3d Cir. 2006) (noting that *Lie* does not foreclose the possibility that subsequent events could establish that a pattern or practice of persecution against ethnic Chinese Christians exists in Indonesia), nothing in the record presently before us compels us to disturb the BIA's decision. The 2004 Department of State Country Report for Indonesia, upon which the IJ relied, lists some incidents of ethnic and religious conflict. However, it also notes several areas in which relations between Chinese Christians and other members of Indonesian society continue to improve, albeit slowly.

Finally, with respect to his claim under the CAT, Sukamto must show that he "is more likely than not" to be tortured in the country of removal. 8 C.F.R. § 208.16(c)(2). The torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id*. at § 208.18(a)(1). Although Sukamto's brief makes a passing reference to his CAT claim, he fails to point to any evidence showing that he will be tortured by the Indonesian government or with its acquiescence.

Accordingly, we will deny the petition for review.